# EXHIBIT 8

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: _JUSTICE SHIRLEY_____  PART 54
_____ Justice

Index Number : 652771/2016
WIMBLEDON FINANCING MASTER
vs
WIMBLEDON FUND, SPC ON
Sequence Number : 001
ENFORCE/EXEC JUDGMENT OR ORDER

INDEX NO. _____
MOTION DATE 11/28/16
MOTION SEQ. NO. _____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). 1-22 |
| Answering Affidavits — Exhibits _____ | No(s). 29-31 |
| Replying Affidavits _____ | No(s). 40-88 |

Upon the foregoing papers, it is ordered that this motion is

MOTION IS GRANTED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION AND ORDER

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 12/22/16                                                          _____, J.S.C.

1. CHECK ONE: .................................................  ☐ CASE DISPOSED          ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................MOTION IS: ☒ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER
3. CHECK IF APPROPRIATE: ................................  ☐ SETTLE ORDER                    ☐ SUBMIT ORDER
                                                            ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
------------------------------------------------------------------X
WIMBLEDON FINANCING MASTER FUND, LTD.,

                        Petitioner,

      -against-

THE WIMBLEDON FUND, SPC on behalf of CLASS C
SEGREGATED PORTFOLIO, WIMBLEDON REAL
ESTATE FINANCING MASTER FUND LTD., BANK
OF AMERICA, N.A., and WESTON CAPITAL
MANAGEMENT, LLC,

                        Respondents.
------------------------------------------------------------------X

Index No: 652771/2016

**DECISION & ORDER**

SHIRLEY WERNER KORNREICH, J.:

     Motion sequence numbers 001 and 002 are consolidated for disposition.

     This is one of two special proceedings (along with a plenary action) before this court in which petitioner, Wimbledon Financing Master Fund Ltd. (Wimbledon), seeks to recover money allegedly stolen from it as part of an alleged massive financial fraud committed by its managers (which is the subject of pending criminal proceedings). As explained below, the plenary action seeks broad redress for this fraud, while the special proceedings are more limited in nature, seeking turnover of funds for the purpose of satisfying a judgment issued by this court in 2013.

     Here, respondents Weston Capital Management, LLC (WCM) and The Wimbledon Fund, SPC, on behalf of Class C Segregated Portfolio (Class C) do not raise material questions of fact as to the intentional and fraudulent nature of the subject funds' transfer under the New York Debtor and Creditor Law (DCL). Nor do they raise any material question regarding personal

jurisdiction. Thus, for the reasons that follow, Wimbledon's petition (Seq. 001) as against WCM and Class C is granted and Class C's motion to dismiss (Seq. 002) is denied.[1]

I.  *Background & Procedural History*

The facts which gave rise to this action were explained in the court's August 19, 2016 decision in the related special proceeding, *Wimbledon Financing Master Fund, Ltd. v Bergstein*, Index No. 150584/2016 (the Related Petition):

> This is yet another action in which Wimbledon, an investment fund organized under the laws of the Cayman Islands and which is currently in Official Liquidation, seeks to recover money that, through an elaborate multitude of schemes, allegedly was stolen from it by its managers. The merits of the underlying allegations will be adjudicated in [*Wimbledon Financing Master Fund, Ltd. v Weston Capital Mgmt., LLC*, Index No. 653468/2015 (the Plenary Action)], not in this special proceeding. ...
>
> Simply put, Wimbledon's assets [limited partnership interests in hedge funds] were swapped for equity in a worthless company called [Gerova Financial Group, Ltd. (Gerova)] that allegedly was used to perpetrate securities fraud. Those assets were later exchanged for equity in a shell company called Arius Libra, Inc. (Arius Libra). Wimbledon's assets were then pledged by Arius Libra to secure a loan in excess of $8 million (the Loan). The Loan proceeds then, allegedly, were transferred to Wimbledon's managers in multiple sham transactions. [Bergstein allegedly fraudulently transferred the Loan proceeds to his own companies and his personal attorneys, who[,] in turn, used the funds for Bergstein's personal use.] ... Wimbledon's managers are alleged to have committed an outright theft of Wimbledon's assets by pocketing the Loan proceeds, knowing that Arius Libra, which was insolvent, would default on the Loan, thereby resulting in Arius Libra forfeiting Wimbledon's assets.
>
> In 2012, Arius Libra defaulted on the Loan. Wimbledon was left with worthless Arius Libra equity, rendering Wimbledon insolvent and resulting in its

---

[1] This decision does not resolve the claims asserted against respondent Wimbledon Real Estate Financing Master Fund Ltd. (WREF). By order dated October 5, 2016, the court granted Wimbledon's motion (Seq. 003) for an extension of time to serve WREF. *See* Dkt. 139. References to "Dkt." followed by a number refer to documents filed in this action on the New York State Courts Electronic Filing (NYSCEF) system. This action will continue against WREF and the fourth respondent, Bank of America, N.A. "Bank of America is named as a defendant herein solely for purposes of obtaining the turnover of the funds in [a checking] account [in the name of WREF]." Petition ¶ 8. Neither WREF nor Bank of America responded to the petition.

2

> liquidation. On September 20, 2012, the lender, Weston Capital Partners Master Fund II, Ltd. (Partners II), commenced an action in this court against Arius Libra to enforce the Loan by filing a summons and a motion for summary judgment in lieu of complaint. *See Weston Capital Partners Master Fund II, Ltd. v Arius Libra Inc.*, Index No. 653309/2012 (the 2012 Action). By order dated January 15, 2013, this court granted the motion on default and directed the entry of judgment. *See* Index No. 653309/2012, Dkt. 20. On April 4, 2013, judgment was entered against Arius Libra in the amount of $6,619,586.77 (the Judgment). *See* Index No. 653309/2012, Dkt. 24. The Judgment remains outstanding.

*Wimbledon Financing Master Fund, Ltd. v Bergstein*, 2016 WL 4410881, at *1-2 (Sup Ct, NY County 2016) (footnotes and citations omitted) (the August 19 Decision).

In the instant petition (Dkt. 1), filed on May 23, 2016, Wimbledon alleges additional fraudulent transfers of the Loan proceeds that are not at issue in the Related Petition:[2] (1) an August 3, 2011 transfer of $700,000 from Arius Libra to Class C (the $700,000 Transfer); and (2) a January 23, 2012 transfer of $250,000 from Arius Libra to WCM (the $250,000 Transfer) (collectively, the Transfers).[3] Wimbledon claims that neither transfer was supported by any consideration and that when they were made, Arius Libra was insolvent. Specifically, Wimbledon contends that the Transfers were constructively fraudulent under DCL §§ 273-275 and intentionally fraudulent under DCL § 276.

While it is undisputed that Class C is an investment fund that is not alleged to have participated in the fraud at issue, Wimbledon claims that the $700,000 Transfer was fraudulent because it was made without any consideration. Class C was managed by non-party Weston Capital Asset Management, LLC (WCAM), which also formerly managed Wimbledon and was

---

[2] For this reason, dismissal under CPLR 3211(a)(4) on the basis of the pendency of the Related Petition is unwarranted. Moreover, dismissal based on the pendency of the Plenary Action is denied for the reasons set forth in the August 19 Decision, 2016 WL 4410881, at *4.

[3] The transfer to WREF, as noted, is not at issue in this decision and is not discussed.

controlled by its principals, Albert Hallac, Jeffrey Hallac, and Keith Wellner. WCM is the parent company of WCAM.

On July 6, 2016, WCM filed an answer to the petition and Class C filed a motion to dismiss. They both raise personal jurisdiction defenses and dispute Wimbledon's claim that the Transfers violate the DCL. The court reserved on the motions after oral argument. *See* Dkt. 145 (11/17/16 Tr.).

*II. Personal Jurisdiction*

Before the court reaches the merits of the petition, it must first address its jurisdiction over WCM and Class C.

Wimbledon contends that jurisdiction exists under CPLR 302(a)(2), which provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person **or through an agent** ... commits a tortious act within the state." (emphasis added). *New Media Holding Co. v Kagalovsky*, 97 AD3d 463, 464 (1st Dept 2012) (jurisdiction under CPLR 302(a)(2) merely requires that there was "commission of a tort in New York State through an agent."); *see Front, Inc. v Khalil*, 103 AD3d 481, 482 (1st Dept 2013) ("The allegations [] are sufficient to establish that the UK defendants engaged in tortious conduct in New York, again acting through Khalil as their agent, and therefore to invoke jurisdiction pursuant to CPLR 302(a)(2)."). WCM concedes that its subsidiary, WCAM, had employees in New York who were involved in the Transfers. Indeed, in the August 19 Decision, 2016 WL 4410881, at *4, the court explained why there is no question that there is jurisdiction over WCAM.[4] Wimbledon contends, and WCM does not dispute, that WCM, a holding company,

---

[4] There, the court discussed WCAM's actions in New York. Moreover, the court cited to Albert Hallac's allocution, where he admitted that "[m]any of the actions described to [the court] today

delegated complete authority to act on its behalf to WCAM and its principals, who are the very people alleged to have engaged in the underlying fraud. In fact, at oral argument, WCM did not dispute that it has a presence in New York. *See* Dkt. 145 (11/17/16 Tr. at 26-27). Likewise, Class C admits that it was operated by WCAM in New York. Vincent King, a director of Class C, submitted an affidavit in which he admits that "Class C delegated its day-to-day management, operations and investment decisions to [WCAM], including its principals, Albert Hallac, Jeffrey Hallac, and Keith Wellner." *See* Dkt. 36 at 2.

WCM and Class C, nonetheless, contend that jurisdiction under CPLR 302(a)(2) does not exist since they never provided a specific authorization for WCAM to effectuate the Transfers separate and apart from their general delegation of authority to WCAM. WCM and Class C, however, do not dispute that making the Transfers was within the scope of WCAM's authority. Consequently, WCM's and Class C's jurisdictional argument has no merit. They cite no case that stands for the proposition that, so long as the principal did not specifically direct its agent to engage in the act constituting a tort, such act is not imputed to the principal despite it falling within the scope of the agent's authority. On the contrary, "the acts of agents, and the knowledge they acquire while acting within the scope of their authority **are presumptively imputed to their principals**." *Kirschner v KPMG LLP*, 15 NY3d 446, 465 (2010) (emphasis added). "Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud. *Id.*[5] Here, as noted, WCM and Class C do

---

occurred while conducting business in the City of New York." *See id.* at *6.

[5] An exception to this rule, the adverse interest exception, is only applicable where the agent "totally abandoned his principal's interests and is acting entirely for his own or another's purposes. It cannot be invoked merely because he has a conflict of interest or because he is not acting primarily for his principal." *Kirschner*, 15 NY3d at 466 (citation and quotation marks

5

not deny that WCAM was their agent or that making the Transfers was within the scope of WCAM's authority. Liability for the Transfers, therefore, is imputed to WCM and Class C. Since the Transfers were effectuated in New York, WCM and Class C are subject to personal jurisdiction in this court with respect to Wimbledon's claims that the Transfers are fraudulent under the DCL.

   III.   *The DCL Claims*

      A.   *Legal Standard*

"CPLR 5225(b) permits a special proceeding to be brought against, and recovery to be had from, 'a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee.'" *Hotel 71 Mezz Lender, LLC v Rosenblatt*, 64 AD3d 431, 432 (1st Dept 2009). CPLR 409 provides that in a special proceeding, "[t]he court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised" and "[t]he court may make any orders permitted on a motion for summary judgment." The standards governing summary disposition of a special proceeding are the same standards applicable on a motion for summary judgment. *See Gonzalez v City of New York*, 127 AD3d 632, 633 (1st Dept 2015).

It is well settled that summary judgment may be granted only when it is clear that no triable issue of fact exists. *Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 (1986). The burden is upon the moving party to make a *prima facie* showing of entitlement to summary judgment as a

---

omitted). That exception is not applicable here because WCM and Class C do not claim that WCAM, in effectuating the Transfers, was not acting for the benefit of WCM and Class C. The Transfers indisputably benefitted WCM and Class C because they received the very funds at issue.

6

matter of law. *Zuckerman v City of New York*, 49 NY2d 557, 562 (1980); *Friends of Animals, Inc. v Associated Fur Mfrs., Inc.*, 46 NY2d 1065, 1067 (1979). A failure to make such a *prima facie* showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. *Ayotte v Gervasio*, 81 NY2d 1062, 1063 (1993). If a *prima facie* showing has been made, the burden shifts to the opposing party to produce evidence sufficient to establish the existence of material issues of fact. *Alvarez*, 68 NY2d at 324; *Zuckerman*, 49 NY2d at 562. The papers submitted in support of and in opposition to a summary judgment motion are examined in the light most favorable to the party opposing the motion. *Martin v Briggs*, 235 AD2d 192, 196 (1st Dept 1997). Mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. *Zuckerman*, 49 NY2d at 562. Upon the completion of the court's examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue of fact. *Rotuba Extruders, Inc. v Ceppos*, 46 NY2d 223, 231 (1978).

In applying this summary judgment burden shifting standard to proceedings under the DCL, New York courts have long held that once the petitioner establishes that "a transfer has been made **without consideration, the initial burden to establish solvency is on the transferor.**" *Shelly v Doe*, 249 AD2d 756, 757 (3d Dept 1998) (emphasis added). To be sure, "'[w]hether the subject conveyance has rendered the debtor insolvent, and whether fair consideration was paid, are generally questions of fact which must be determined under the circumstances of the particular case' and, generally, 'the burden of proving these elements is upon the party challenging the conveyance.'" *Chen v New Trend Apparel, Inc.*, 8 FSupp3d 406, 445 (SDNY 2014), quoting *Joslin v Lopez*, 309 AD2d 837, 838 (2d Dept 2003). "However, **when a transfer has been made for no consideration,** the courts recognize **a rebuttable**

7

**presumption of insolvency and fraudulent transfer**, and **the burden then shifts to the transferee to overcome that presumption.** *Chen*, 8 FSupp3d at 445 (collecting cases; emphasis added), *see, e.g., RTC Mort. Trust 1995-S/N1 v Sopher*, 171 FSupp2d 192, 199 (SDNY 2001) ("When a transfer is made without consideration, courts have applied a presumption of insolvency that shifts the burden to the defendant to rebut by showing continued solvency after the transaction.") (collecting cases); *McCarthy v Estate of McCarthy*, 145 FSupp3d 278, 286 (SDNY 2015) (same).

### B. Constructive Fraudulent Conveyance

DCL § 273 provides that "[e]very conveyance made and every obligation incurred by a person who is or **will be thereby rendered insolvent** is fraudulent as to creditors **without regard to his actual intent** if the conveyance is made or the obligation is incurred **without a fair consideration**." (emphasis added). DCL §§ 274 and 275, respectively, further provide:

> [§ 274] Every conveyance made **without fair consideration** when the person making it is **engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital**, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction **without regard to his actual intent**.
>
> [§ 275] Every conveyance made and every obligation incurred **without fair consideration** when the person making the conveyance or entering into the obligation intends or believes that he will **incur debts beyond his ability to pay as they mature**, is fraudulent as to both present and future creditors.

(emphasis added). Simply put, "[a] conveyance that renders the conveyor insolvent is fraudulent as to creditors **without regard to actual intent**, if the conveyance was made without fair consideration." *CIT Group/Commercial Servs., Inc. v 160-09 Jamaica Ave. Ltd. P'ship*, 25 AD3d 301, 302 (1st Dept 2006) (emphasis added). Moreover, even if there is fair consideration, a transfer is still constructively fraudulent in the absence of good faith on the part "**of both the**

8

transferor and the transferee." *Id.* at 303 (emphasis added), quoting *Berner Trucking, Inc. v Brown*, 281 AD2d 924, 925 (1st Dept 2001); *see Sardis v Frankel*, 113 AD3d 135, 142 (1st Dept 2014) ("'Fair consideration' ... is not only a matter of whether the amount given for the transferred property was a 'fair equivalent' or 'not disproportionately small,' which the parties vigorously dispute, but whether the transaction is made 'in good faith,' an obligation that is imposed on both the transferor and the transferee."). Importantly, as pertinent here, "[a]n insider payment is not in good faith, regardless of whether or not it was paid on account of an antecedent debt." *Am. Media, Inc. v Bainbridge & Knight Labs., LLC*, 135 AD3d 477, 478 (1st Dept 2016), citing *EAC of N.Y., Inc. v Capri 400, Inc.*, 49 AD3d 1006, 1007 (3d Dept 2008) ("The requirement of good faith is not fulfilled through preferential transfers of corporate funds to directors, officers or shareholders of a corporation that is, or later becomes, insolvent, in derogation of the rights of general creditors."); *Am. Panel Tec v Hyrise, Inc.*, 31 AD3d 586, 587 (2d Dept 2006) (same); *P.A. Bldg. Co. v Silverman*, 298 AD2d 327, 328 (1st Dept 2002) (same).

In this case, Wimbledon alleges and submits evidence that neither of the Transfers were made for *any* consideration. This allegation shifts the burden onto WCM and Class C to raise a question of fact about fair consideration or Arius Libra's solvency.

With respect to the $250,000 Transfer, the only consideration claimed by WCM is repayment of management fees and expenses allegedly owed by Arius Libra to WCAM. This is insufficient. Since both Arius Libra and WCAM were controlled by Albert Hallac, Jeffrey Hallac, and Keith Wellner (and, apparently, non-party David Bergstein), any payment made by Arius Libra to WCAM would be a payment to an insider and, therefore, cannot be considered to be in good faith. This is true regardless of whether Arius Libra actually owed fees and expenses

9

to WCAM, and whether the payment, which was made to WCM (not to WCAM),[6] was indeed repayment of these alleged fees and expenses.

In the absence of good faith, WCM is obligated to at least raise a question of fact about Arius Libra's insolvency. It has not done so. WCM has not explained how Arius Libra – a shell entity allegedly created for the sole purpose of stealing Wimbledon's assets by using the Loan proceeds to pay off supposed debts to Arius Libra's insiders – could possibly have paid off the amount due on the Loan after squandering its proceeds. WCM does not allege any other assets Arius Libra had to do so, and, accordingly, has not proffered a genuine question regarding Arius Libra's insolvency. *See* DCL § 271 ("A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.").

Class C's explanations are no better. Wimbledon alleges that the $700,000 Transfer, made by Arius Libra with the Loan proceeds, lacked consideration because Arius Libra did not owe any money to Class C. Instead, Class C was owed money by Gerova, a separate entity controlled by Wimbledon's former managers.[7] Albert Hallac and Keith Wellner are alleged to have used $700,000 of Arius Libra's Loan proceeds to pay off this Gerova debt. Class C does not dispute this and, in fact, admits that the $700,000 Transfer was not made in repayment of an Arius Libra debt. *See* Dkt. 33 at 12 ("WCAM caused Wimbledon Class C to be repaid $700,000 due on the Gerova Loan."); *see also id.* at 20 ("Class C received the purported fraudulent transfer

---

[6] With respect to jurisdiction, WCM argued that it and WCAM should be considered distinct entities. That undercuts its suggestion that it was proper to make payment to WCM of fees owed to WCAM.

[7] Class C appears, like Wimbledon, to be victim of the Gerova fraud. Nonetheless, it had no right to receive money from Arius Libra without providing Arius Libra with consideration.

10

in exchange for fair consideration – namely the $700,000 loan Wimbledon Class C made to Gerova."). Ergo, Class C has admitted that it received the $700,000 Transfer without providing any consideration to Arius Libra. While these circumstances are rank with the badges of fraud (an issue pertinent to the claim under DCL § 276, discussed below), they, quite simply, amount to an allegation that the $700,000 Transfer was not made in repayment of an antecedent debt of Arius Libra, as opposed to another entity controlled by Arius Libra's managers. While Class C claims to lack actual knowledge of the Gerova scam or the fraudulent intent behind the $700,000 Transfer, its knowledge only goes to its good faith, not the existence of consideration. In any event, Class C's good faith is not enough; the bad faith on the part of the transferors (Arius Libra's managers) precludes a finding of fair consideration. *See CIT Group*, 25 AD3d at 303. In the absence of fair consideration – and here, there simply was *no* consideration to Arius Libra – the $700,000 Transfer is constructively fraudulent.

      C.    *Intentional Fraudulent Conveyance*

DCL § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." *Wall St. Assocs. v Brodsky*, 257 AD2d 526, 529 (1st Dept 1999). A claim under DCL § 276 must be pleaded with particularity under CPLR 3016 (b). *RTN Networks, LLC v Telco Group, Inc.*, 126 AD3d 477, 478 (1st Dept 2015). However, "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers 'that their presence gives rise to an inference of intent.'" *Wall St. Assocs.*, 257 AD2d at 529 (citations omitted); *see Ray v Ray*, 108 AD3d 449, 451 (1st Dept 2013); *CIT Group*, 25 AD3d at 303. "The badges of fraud include

11

circumstances such as 'a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; **inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it**; and retention of control of the property by the transferor after the conveyance.'" *Square Mile Structured Debt (ONE) LLC v Swig*, 2013 WL 6409967, at *3 (Sup Ct, NY County 2013) (emphasis added), quoting *Wall St. Assocs.*, 257 AD2d at 529; *see Bd. of Managers of Loft Space Condo. v SDS Leonard, LLC*, 142 AD3d 881, 883 (1st Dept 2016). Where the plaintiff alleges badges of fraud, upon "defendants' failure to proffer any legitimate explanation for the conveyances, the defendants' actual fraudulent intent is readily inferrable, and the plaintiff is entitled to a judgment setting those conveyances aside under [DCL § 276]." *Machado v A. Canterpass, LLC*, 115 AD3d 652, 654 (2d Dept 2014) (collecting cases).

There is no question of fact that the $700,000 Transfer was an intentional fraudulent conveyance. Wimbledon alleges, and Class C admits, that the $700,000 Transfer was made using Arius Libra's money for the express purpose of paying off a Gerova debt. Class C does not dispute (nor is there any evidence in the record refuting the fact) that Arius Libra's managers knew that Arius Libra had no means to repay the Loan after using its proceeds to pay off debts owed to other entities (including creditors of Gerova, Bergstein, etc.). This is a textbook example of an intentional fraudulent conveyance.

The same is true of the $250,000 Transfer. The badges of fraud are present because the managers of Arius Libra used Arius Libra's money to pay themselves fees through WCM, an entity they controlled. WCM, in fact, was not owed fees; WCAM was. In any event, the self-dealing nature of the $250,000 Transfer coupled with the fact that Arius Libra was insolvent is sufficient to prove that the $250,000 Transfer was made for the purpose of defrauding Arius

12

Libra's creditors. The very purpose of Arius Libra appears to have been to take the Loan proceeds, default on the Loan, and permit Wimbledon to lose its assets, which were pledged to guaranty repayment of the Loan. While the Loan proceeds were supposedly used to "unwind" Gerova's debts, that fact is not license for WCM to prioritize payment to its insiders (regardless of whether such debts were bona fide) or to pay off Gerova's debts with Arius Libra's assets without regard to Arius Libra's solvency or the rights of its creditors.

For these reasons, Wimbledon is granted summary judgment on its claims against WCM and Class C. "Having established actual intent to defraud [under DCL § 276, Wimbledon] is entitled to attorneys' fees under DCL § 276-a." *Setters v AI Props. & Devs. Corp.*, 139 AD3d 492, 494 (1st Dept 2016). Accordingly, it is

ORDERED that Class C's motion to dismiss is denied, and the petition is granted as against WCM and Class C, and the calculation of Wimbledon's reasonable attorneys' fees is referred to a Special Referee to hear and report; and it is further

ORDERED that within 7 days of the entry of this order on NYSCEF, Wimbledon shall serve a copy of this order with notice of entry, as well as a completed information sheet, on the Special Referee Clerk at spref-nyef@nycourts.gov, who is directed to place this matter on the calendar of the Special Referee's part for the earliest convenient date and notify all parties of the hearing date; and it is further

13

ORDERED that after the amount of Wimbledon's attorneys' fees are determined, judgment shall be entered against WCM and Class C, and the action shall be severed and shall continue against WREF and Bank of America.

Dated: December 22, 2016      ENTER:

_____
J.S.C.

SHIRLEY WERNER KORNREICH
J.S.C