UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
XL SPECIALTY INSURANCE COMPANY,    :
                                   :
     Interpleader-Plaintiff,       :
                                   :
          -v-                      :     17-cv-2867
                                   :
ALBERT HALLAC, JEFFREY HALLAC,     :     MEMORANDUM
KEITH WELLNER, WESTON FINANCIAL    :
SERVICES LLC, WESTON CAPITAL       :
MANAGEMENT LLC, WESTON CAPITAL     :
ASSET MANAGEMENT LLC,              :
                                   :
     Interpleader-Defendants,      :
                                   :
          -and-                    :
                                   :
WIMBLEDON FINANCING MASTER FUND,   :
LTD.,                              :
                                   :
     Intervenor-Defendant.         :
---------------------------------x



JED S. RAKOFF, U.S.D.J.

On April 20, 2017, XL Specialty Insurance Company ("XL") filed the instant interpleader action, alleging multiple and competing demands to the proceeds of one of its financial services liability policies. See Complaint ¶ 6, Dkt 1. XL impleaded six defendants - Albert Hallac, Jeffrey Hallac, Keith Wellner, Weston Financial Services LLC ("WFS"), Weston Capital Management LLC ("WCM"), and Weston Capital Asset Management LLC ("WCAM") (the "interpleader-defendants" or the "policyholders"). Id. ¶¶ 11-16.

On May 3, Wimbledon Financing Master Fund, Ltd. ("Wimbledon" or "intervenor-defendant") moved to intervene arguing that it had

a direct, substantial, and legally protectable interest in the policy proceeds. See Dkt. 22; Memorandum of Law in Support of Proposed Intervenor-Defendant Wimbledon Financing Master Fund Ltd.'s Motion to Intervene ("MTI") at 1, Dkt. 26. Specifically, Wimbledon asserted claims to the proceeds arising out of (1) a May 11, 2017 New York State Court judgment against two Insured Persons (interpleader-defendant WCM and non-party The Wimbledon Fund SPC on behalf of Class C Segregated Portfolio ("Class C")) (the "May 11 Judgment") and (2) a settlement agreement-in-principle with an Insured Person (Jeffrey Hallac) (the "Hallac Settlement"). See MTI at 10. Interpleader-defendants opposed. See Dkt. 32. Upon due consideration, on May 31, the Court granted Wimbledon's motion. See Order dated May 31, 2017, Dkt. 48.

On June 7, interpleader-defendants moved for summary judgment against Wimbledon. See Dkt. 60; Interpleader-Defendants' Joint Memorandum of Law in Support of Summary Judgment as Against Wimbledon Financing Master Fund Ltd. ("Def. Mem."), Dkt. 62. Wimbledon opposed. See Intervenor Defendant Wimbledon Financing Master Fund Ltd.'s Memorandum of Law in Opposition to Interpleader Defendants' Motion for Summary Judgment ("Int. Opp."), Dkt. 72. On July 21, Wimbledon obtained a New York State Supreme Court judgment against WCAM (the "July 21 Judgment"), which, according to Wimbledon, gave rise to a further claim to the policy proceeds. See Dkt. 101-1. On August 1, the Court heard oral argument on

interpleader-defendants' motion. See Transcript dated August 1, 2017 ("Tr.") at 14, Dkt. 109.

Thereafter, by bottom-line Order dated August 25, 2017, the Court granted interpleader-defendants' motion in part, finding that Wimbledon's claims to the interpleader funds arising from the May 11 Judgment and the July 21 Judgment were barred as a matter of law. See Dkt. 111. With respect to Wimbledon's claim to the funds arising from the Hallac Settlement, the Court permitted both sides to submit additional briefing to address certain then-recent developments (discussed further below). Following this briefing, the Court, by bottom-line Order dated October 30, 2017, denied the remainder of interpleader-defendants' motion for summary judgment, finding that Wimbledon's claim to the interpleader funds arising from the Hallac Settlement was not barred as a matter of law. See Dkt. 119.

This Memorandum sets forth the reasons for these rulings.

The pertinent facts, either undisputed, or where disputed, taken in the light most favorable to Wimbledon, are as follows:

XL issued a $10 million insurance policy numbered ELU125328-12 (the "policy"), see Declarations, Dkt. 1-1, Endorsements, Dkt. 1-2, the remaining proceeds of which were deposited with the Court in August 2017 (the "interpleader funds"), see Wimbledon Financing Master Fund Ltd.'s Counterstatement to Interpleader Defendants' Statement of Material Facts and Statement of Additional Undisputed

3

Material Facts ("Int. Ct. 56.1 St.") ¶¶ 1, 3, Dkt. 81. Albert Hallac, Jeffrey Hallac, Keith Wellner, WFS, WCM, and WCAM are Insureds under the policy. Id. ¶ 2.

The policy covers losses defined as "damages, judgments, settlements or other amounts (including punitive, exemplary or multiplied damages where insurable by law) in excess of the Retention that the Insured is obligated to pay, and Defense Expenses, whether incurred by the Insurer or the Insured, in excess of the Retention." Complaint ¶ 23. The policy defines "Defense Expenses" as "reasonable legal fees and expenses incurred in the defense of any Claim." Id. ¶ 24.

The policy does not, however, cover losses generated in connection with any claim made against an Insured that was "brought about or contributed to in fact by any:

   (1)   intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

   (2)   profit or remuneration gained by any Insured to which such Insured is not legally entitled;

   as determined by a final adjudication in the underlying action or in a separate action or proceeding.

Id. ¶ 25. The policy further provides that "no conduct of any Insured shall be imputed to any other Insured to determine the application of any of the EXCLUSIONS in the above Coverage Parts." Endorsements No. 30.

4

On December 22, 2016, Justice Kornreich of the New York State Supreme Court granted Wimbledon summary disposition against WCM and non-party Class C in a case brought by Wimbledon, holding that a $700,000 transfer to Class C and a $250,000 transfer to WCM were made without consideration and constituted constructive and intentional fraudulent transfers under sections 273 and 276 of the New York Debtor and Creditor Law ("DCL"). See Interpleader-Defendants' Response to Wimbledon Financing Master Fund Ltd.'s Statement of Additional Material Facts Pursuant to Local Civil Rule 56.1 ("Def. Ct. 56.1 St.") ¶ 83, Dkt. 85; Decision & Order dated December 22, 2016 ("Decision"), Dkt. 61-7. In her Decision and Order, Justice Kornreich found, inter alia, that:

> There is no question of fact that the $700,000 Transfer was an intentional fraudulent conveyance. Wimbledon alleges, and Class C admits, that the $700,000 Transfer was made using Arius Libra's money for the express purpose of paying off a Gerova debt. Class C does not dispute (nor is there any evidence in the record refuting the fact) that Arius Libra's managers knew that Arius Libra had no means to repay the Loan after using its proceeds to pay off debts owed to other entities (including creditors of Gerova, Bergstein, etc.). This is a textbook example of an intentional fraudulent conveyance.

Id. at 12. "The same is true," Justice Kornreich wrote, "of the $250,000 Transfer." Id. "The badges of fraud are present because the managers of Arius Libra used Arius Libra's money to pay themselves fees through WCM, an entity they controlled." Id. Thereafter, on May 11, 2017, the Justice Kornreich entered judgment

against WCM and Class C in favor of Wimbledon. See Judgment dated
May 11, 2017, Dkt. 78-21.

During the pendency of the above-mentioned proceedings, in or
about the fall of 2016, Wimbledon negotiated a settlement agreement
in principle with Jeffrey Hallac to include the payment of $250,000
to Wimbledon from XL. See Def. Ct. 56.1 St. ¶ 97. Hallac and
Wimbledon, however, did not execute their agreement until June 21,
2017, more than two months after XL had filed the instant suit,
and more than two weeks after interpleader-defendants, including
Hallac, moved for summary judgment. See Settlement Agreement and
Mutual Release, Dkt. 113-2. Under the agreement, Wimbledon
released its claims against Hallac, and Hallac assigned to
Wimbledon an interest in the policy in the amount of $250,000.
That same day, Hallac, through counsel, made a demand on XL to
fund the $250,000. See Letter from Matthew Coogan to Michael
Chester dated June 21, 2017, Dkt. 112-1. XL refused, citing the
instant interpleader action. See Letter from Michael Chester to
Matthew Coogan dated June 27, 2017, Dkt. 112-2. On August 1, the
Grand Court of the Cayman Islands approved the Hallac Settlement
and it took immediate effect. See Tr. at 14:7-10.

**I. Discussion**

Summary judgment is appropriate where "the movant shows that
there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

6

In determining whether a genuine dispute of material fact exists, the Court resolves all ambiguities and draws all reasonable inferences against the moving party. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). It is well established in the Second Circuit that the interpretation of an insurance agreement is a question of law that may be resolved on summary judgment. See, e.g., Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 650 F. App'x 70, 72-73 (2d Cir. 2016).

**(A) May 11 Judgment**

Interpleader-defendants argue that Wimbledon's May 11 Judgment claim is barred because, inter alia, the XL policy does not cover claims "brought about or contributed to in fact" by "intentionally dishonest" and/or "fraudulent" acts (hereinafter the "fraud exclusion"). Def. Mem. at 6-9.

Wimbledon opposes on several grounds. First, Wimbledon argues that interpleader-defendants' argument is inconsistent with WCM's prior position (i.e. that WCM was entitled to use the policy proceeds to fund its defense of the very same lawsuit). See Int. Opp. at 15-16. But "[e]ven where the insurer ultimately has no duty to indemnify due to policy exclusions, it may still be obligated to defend the insured until the applicability of the exclusions [is] determined." CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 77 (2d Cir. 2013) (quotation omitted). See also Robbins v. Mich. Millers Mut. Ins. Co., 236 A.D.2d 769, 770

(N.Y. App. Div. 1997) ("While the duty to defend is generally measured against the allegations of the pleadings in the underlying action, the duty to indemnify is distinctly different, for it is determined by the actual basis of the insured's liability to [the] plaintiff."). Accordingly, WCM's request for defense costs is not inconsistent with its position that Wimbledon's judgment claim is excluded from coverage.

Second, Wimbledon argues that because "Justice Kornreich did not find that either WCM or Class C acted with actual fraudulent intent," id. at 17, but only that Albert Hallac and Keith Wellner so acted, and because the policy provides that "no conduct of any Insured shall be imputed to any other Insured to determine the application of any of the Exclusions in any of the relevant coverage parts," id. at 18 (quotation omitted), the policy's fraud exclusion does not apply here. But as part of her finding of liability for fraudulent conveyance, Justice Kornreich necessarily found that there was an actual intent to defraud on the part of both the transferor and the transferee – i.e. WCM and Class C. See United States v. McCombs, 30 F.3d 310, 327-28 (2d Cir. 1994) (noting that a section 276 violation turns on the "actual intent" of the "transacting parties"). The fact that WCM and Class C were controlled by other insureds does not work to undo that finding.[1]

---

[1] On Wimbledon's erroneous reading of the policy, the fraud exclusion could never apply to an insured entity controlled by

Third, Wimbledon argues that, because fraudulent intent is not an element of a claim under DCL § 273 (one of the causes of action underpinning the May 11 Judgment), Wimbledon is entitled to at least a portion of the policy proceeds. Wimbledon points specifically to the terms of the policy that state that "when a claim made against the Insured contains both covered and uncovered matters," coverage for the loss must be allocated between the two. Int. Opp. at 16-17 (quoting Int. 56.1 St. § 45). But the policy expressly excludes from coverage any claim "brought about or contributed to in fact" by fraudulent or intentionally dishonest acts. Complaint ¶ 25. Justice Kornreich expressly found that both the $700,000 transfer and the $250,000 transfer were "textbook example[s] of an intentional fraudulent conveyance." The fact that constructive liability may also be founded on intentionally dishonest conduct does not transform the underlying acts from intentional ones to unintentional ones. Accordingly, the entire judgment is attributable to intentionally fraudulent conduct, see Atl. Mut. Ins. Co. v. Terk Techs. Corp., 309 A.D.2d 22, 28 (N.Y. App. Div. 2003) ("[t]he duty to indemnify is determined by the actual basis for the insured's liability to a third person, and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy") (emphasis

_____

another insured because no fraudulent act taken by the controller could be imputed to the entity.

added) (internal citations and quotations omitted), and Wimbledon's claim to the policy arising out of its May 11 Judgment against WCM and Class C is barred by the fraud exclusion as a matter of law.

**(B) July 21 Judgment**

As regards the more recent judgment entered by Justice Kornreich against WCAM on July 21, 2017, see Dkt. 101-1, Wimbledon concedes that it "mirrors" the May 11 Judgment previously entered against WCM and Class C, see Tr. at 16:1. Indeed, a violation of DCL § 276 for intentional fraudulent conveyance also underpins the July 21 Judgment. See Dkt. 101-2. Accordingly, the Court finds that the July 21 Judgment does not give rise to a claim to the policy proceeds as a matter of law.[2]

**(C) Hallac Settlement**

XL recognized in its complaint that the Hallac Settlement gave rise to a potential claim to the policy proceeds. See Complaint ¶ 39 (listing "the potential $250,000 settlement" among the claims that could exhaust the policy). Interpleader-defendants also recognized the Hallac Settlement in their moving papers for

---

[2] Although Wimbledon argues that it has additional lawsuits pending that might result in further claims, purely hypothetical claims cannot take precedence over preexisting claims, except to the extent the debtor would retain an interest in the fund over and above the total meritorious claims of the interpleader defendants. See Avant Petroleum, Inc. v. Banque Paribas, 853 F.2d 140, 143 (2d Cir. 1988).

10

summary judgment, noting that the "full balance of the Policy is set to be used to pay outstanding defense costs, and a settlement directly to Wimbledon itself." Def. Mem. at 2; id. at 15 (the "Interpleader-Defendants have, themselves, come to an agreement to resolve this interpleader action, which includes an allocation of $250,000 for a settlement payment to Wimbledon" on behalf of Hallac). Accordingly, it is not at all clear that interpleader-defendants can be permitted now to contest Wimbledon's claim to the policy arising out of the agreement. See Int. Opp. at 22 (Wimbledon, asserting its claim to the policy proceeds arising out of the Hallac Settlement). Nonetheless, the Court permitted interpleader-defendants to submit further briefing on the question of whether the Hallac Settlement agreement gave rise to a cognizable claim, and interpleader-defendants there argued that Wimbledon is not entitled to press its claim to the policy proceeds in this action on the basis of the Settlement because (1) XL never consented to the agreement as required by the policy and (2) interpleader-defendants' claims have priority. See Letter dated September 1, 2017 ("Def. Ltr.") at 1, Dkt. 112.

As regards the finality of the Hallac Settlement, plainly there is a genuine dispute of fact regarding whether or not XL approved the agreement. While counsel for XL stated in open court that the "actual execution of the settlement agreements did not receive prior approval," Tr. at 28:7-13, Wimbledon points to

11

admissible evidence that XL did approve the settlement in 2017. For example, in February 2017, Wimbledon asked XL to sign the settlement and counsel for Hallac "expressed doubt that XL would sign, and informed [counsel for Wimbledon] that XL had a policy not to sign settlement agreements." Declaration of Howard J. Kaplan in Support of Wimbledon Financing Master Fund Ltd.'s Further Opposition to Interpleader-Defendants' Motion for Summary Judgment ("Kaplan Decl.") ¶ 11, Dkt. 113-1. Thereafter, counsel for XL expressly noted "'[t]o be clear, XL has agreed to the settlement and the payment,'" id. (citing Ex. 4), and, on March 6, 2017, counsel for XL stated that "XL had a policy of not signing settlement agreements, but that XL had approved the settlement and [counsel] knew of no reason that XL would not pay the $250,000 settlement amount," id. ¶ 13.

As regards interpleader-defendants' argument that its claims to the interpleader funds take priority over Wimbledon's Hallac Settlement claim, this is not the case as a matter of law. Interpleader-defendants cite the first-in-time, first-in-right rule, see Def. Ltr. at 4, but this rule is merely a rebuttable presumption for insurers. In an interpleader action, the Court, in exercising its equitable discretion, can distribute funds irrespective of the timing of competing claims. See Boris v. Flaherty, 672 N.Y.S.2d 177, 180 (1998) (while "not required to do so, a court may exercise its equitable power to prorate insurance

12

proceeds among claimants"); Bricks Unlimited, Inc. v. Agee, 672 F.2d 1255, 1261 (5th Cir. 1982) ("In determining the order of distribution of the interpleaded funds, we sit as a court of equity, and possess the remedial flexibility of a chancellor in shaping our decree so as to do complete equity between the parties.").

## II. Conclusion

For the reasons stated above, the Court granted in part and denied in part the motion of interpleader-defendants for summary judgment as to Wimbledon's claims to the interpleader funds. Shortly thereafter, the parties entered into a settlement agreement, see Dkt. 120-1, and jointly moved for disbursement of the interpleader funds, see Dkt. 120. On February 5, 2018, the Court entered final judgment, see Dkt. 121, and, on February 12, the Clerk disbursed the funds.  Accordingly the case is now closed.

Dated: New York, NY
       June 20, 2018

JED S. RAKOFF, U.S.D.J.

13